IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-01757-LTB-MJW

KEYBANK NATIONAL ASSOCIATION,

      Plaintiff,

v.

GELFOND & ASSOCIATES, P.C., a Colorado corporation,
LAWRENCE P. GELFOND, and
JULIE L. GELFOND, jointly and severally,

      Defendants.
_____

ORDER
_____

This matter is before me on Plaintiff KeyBank National Association's ("KeyBank") Motion for Summary Judgment [Docket No. 11] against Defendants Lawrence P. Gelfond and Julie L. Gelfond (the "Gelfonds"). The Gelfonds have not filed a response. I have jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and venue is proper pursuant to 28 U.S.C. § 1391(b)(2). Oral argument would not materially assist me in determining the motion. I have considered the motion and all related pleadings and exhibits and am otherwise fully advised in the premises. I GRANT the motion for the following reasons.

**I. Facts**

KeyBank filed this lawsuit against Gelfond & Associates, P.C. ("Associates") and the Gelfonds on June 24, 2014. KeyBank's complaint [Docket No. 1] alleges breach of contract with respect to a loan it made to Associates and a loan it made to the Gelfonds. KeyBank seeks damages for unpaid principal, interest, and fees, together with attorneys' fees, expenses, and

court costs.

The following facts are taken from KeyBank's motion.  On May 31, 2006, KeyBank advanced $100,000 in credit to Associates.  This was increased to $200,000 on August 7, 2008.  The Gelfonds guaranteed repayment of Associates' indebtedness.  On May 28, 2009, KeyBank advanced $301,500 in credit to the Gelfonds in their individual capacity.  Attached to KeyBank's motion are the following documents evidencing these transactions:

1. Commercial Guaranty dated May 31, 2006 and executed by Julie L. Gelfond (Ex. A to Mot.) [Docket No. 11-2];

2. Commercial Guaranty dated May 31, 2006 and executed by Lawrence P. Gelfond (Ex. A to Mot.) [Docket No. 11-2];

3. Promissory Note dated May 31, 2006 and executed by Lawrence P. Gelfond as President of Gelfond & Associates, P.C. (Ex. B to Mot.) [Docket No. 11-3];

4. Business Loan Agreement dated May 31, 2006 and executed by Lawrence P. Gelfond as President of Gelfond & Associates, P.C. (Ex. B to Mot.) [Docket No. 11-3];

5. Business Loan Agreement dated August 7, 2008 and executed by Lawrence P. Gelfond as President of Gelfond & Associates, P.C. (Ex. C to Mot.) [Docket No. 11-4];

6. Promissory Note dated May 28, 2009 and executed by Lawrence P. Gelfond and Julie L. Gelfond (Ex. D. to Mot.) [Docket No. 11-5]; and

7. Modification and Extension Agreements dated May 11, 2011, May 29, 2012, and June 25, 2013 and executed by Lawrence P. Gelfond and Julie L. Gelfond in their individual capacities and Lawrence P. Gelfond as President of Gelfond & Associates, P.C. (Ex. E to Mot.) [Docket No. 11-6].

I refer to these documents collectively as the "loan documents."

The loan documents show that the borrowers—the Gelfonds as to the personal loan and Associates as to the business loan—were required to make monthly interest payments to KeyBank and, on the maturity date, pay KeyBank all outstanding principal plus any remaining interest owed.  The documents give KeyBank the right to accelerate the loans in the event of a

missed payment and demand payment of all unpaid interest and principal. On the personal loan, the Gelfonds agreed to pay "reasonable expenses" that KeyBank deems "necessary at any time for the protection of its interest or the enforcement of its rights." Similarly, on the business loan, Associates agreed to pay "reasonable costs of . . . collection," including KeyBank's attorneys' fees, expenses, and court costs. The Gelfonds' guaranties state that they "guarantee the full and punctual payment, performance and satisfaction" of Associates' indebtedness.

The loan documents show that KeyBank, Associates, and the Gelfonds eventually agreed to several extensions of the maturity dates of the loans, with the final modification and extension agreement providing for a May 10, 2014 maturity date for both loans. In exchange, the Gelfonds agreed to provide KeyBank with additional consideration, including certain "principal curtailment payments" and "modification fees." In that agreement, dated June 25, 2013, Associates and the Gelfonds, as guarantors of the loan to Associates, acknowledged that they owed KeyBank "$199,916.47, plus unpaid accrued interest and any unpaid fees and costs" on the loan to Associates. The Gelfonds acknowledged that they owed "$205,294.15, plus unpaid accrued interest and any unpaid fees and costs" on the personal loan. The final agreement provided that it and the "transactions evidenced hereby" were to be "governed by the laws of the State of Colorado." The other loan documents contain similar language.

KeyBank also attaches to its motion an affidavit of its representative, Quinn Kelly, who attests to having knowledge of business records related to the loans. Aff. of Q. Kelly ¶¶ 1-2 [Docket No. 11-7]. Mr. Kelly avers that "[t]he Gelfonds have defaulted on their monthly payments" and that "[n]otwithstanding KeyBank's demand, the Gelfonds have failed to pay the balance due under the Consolidated loan documents for breach of contract and the Guaranties."

*Id.* ¶ 21.  Mr. Kelly adds that, as of September 3, 2014, KeyBank had sustained $389,232.90 in damages, with interest continuing to accrue each day.  *Id.*  The following table from Mr. Kelly's affidavit, *see id.* ¶ 22, itemizes KeyBank's damages:

| **Business Loan #1101** | | **Personal Loan #4** | |
|---|---|---|---|
| *Principal Amount* | $194,916.47 | *Principal Amount* | $184,342.29 |
| *Interest Thru 9/3/14* | $5,075.95 | *Interest Thru 9/3/14* | $4,898.19 |
| *Per Diem* | $33.84 | *Per Diem* | $31.57 |
| *Other Charges* | Legal to date | *Other Charges* | Legal to date |

On October 9, 2014, the Court entered default judgment against Associates in the amount of $201,142.98 plus attorneys' fees—representing damages related to breach of the business loan only—after Associates failed to respond to the complaint.  The instant motion seeks summary judgment against the Gelfonds as to both the business loan and the personal loan.

More than one month has passed since the deadline for the Gelfonds to file a response to KeyBank's motion, yet they have not done so.  I am satisfied, however, that they were served with the motion.  While certain orders the Court served on the Gelfonds at their address of record have been returned to the Court as undeliverable, *see* Docket Nos. 15-20, Mr. Gelfond recently appeared at a status conference at which the instant motion was discussed.  *See* Courtroom Minutes/Minute Order at 1 [Docket No. 32].  The courtroom minutes do not indicate that Mr. Gelfond raised any concerns about the motion.  In any event, a party must provide notice of any change of address pursuant to D.C.COLO.LCivR 11.1(d), and the Gelfonds have not done so.

## II.  Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a). The movant has the initial responsibility of identifying for the Court "particular parts of materials in the record"—including, for example, "documents, electronically stored information, [and] affidavits"—that it believes show the absence of genuine issues of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once the movant has done so, the non-movant has the responsibility to "respond with specific facts showing the existence of a genuine factual issue to be tried." *Otteson v. U.S.*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56 (c) & (e). A court, however, may not grant a motion for summary judgment merely because the non-movant fails to respond. Rather, the court must "first examin[e] the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002); *Caler v. Brown*, No. 13-CV-02093-PAB-DW, 2014 WL 4783387, at *2 (D. Colo. Sept. 25, 2014). Once the court is satisfied that the moving party has met its burden of production, summary judgment may enter. *Reed,* 312 F.3d at 1195; Fed. R. Civ. P. 56(e)(3).

### III. Analysis

As noted, the final agreement between the parties indicates that it and the transactions at issue here are to be governed by Colorado law. "In making a choice of law determination, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1178 (10th Cir. 2009) (internal quotations, citations, and brackets omitted). Under Colorado law, "a choice of law provision [in a contract] is enforceable." *URS Grp., Inc. v. Tetra Tech FW, Inc.*, 181 P.3d 380, 384 (Colo.

App. 2008). There is no suggestion in the record that federal law or some other state's law might apply here. I also note that KeyBank's motion is based on Colorado law. Accordingly, I will apply Colorado law.

Under Colorado law, a breach of contract claim has four elements: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Contrada, Inc. v. Parsley*, 2012 WL 573918, at *2 (D. Colo. Feb. 22, 2012) (citing *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992)). An enforceable contract requires mutual assent between competent parties to an exchange for legal consideration. *Id.* (citing *Denver Truck Exch. v. Perryman,* 307 P.2d 805, 810 (Colo. 1957)). KeyBank has produced evidence establishing each of these elements. I will take each element in turn.

First, KeyBank has produced documents establishing the existence of an enforceable contract, or mutual assent between competent parties to an exchange for legal consideration. As set forth above, the loan documents show that KeyBank loaned money to the borrowers—the Gelfonds on the personal loan and Associates on the business loan—in exchange for their agreement to make monthly interest payments, repay any unpaid principal and interest on the maturity date, and abide by the other terms and conditions set forth in the loan documents. The borrowers also agreed to pay reasonable expenses associated with collection in the event of default. The guaranties likewise evidence mutual assent between KeyBank and the Gelfonds to an exchange for legal consideration. Legal consideration was present because the Gelfonds knew or had reason to know that KeyBank would incur a detriment (*i.e,.* loan money to Associates) in reliance on the guaranties. *Farmers Elevator Co. of Sterling v. First Nat'l Bank of*

*Fleming,* 488 P.2d 238, 239 (Colo. App. 1971). The parties later entered into modification and extension agreements that reflect further mutual assent in exchange for a further exchange of legal consideration. Specifically, KeyBank extended the maturity date of the loans in exchange for the Gelfonds' agreement to make certain additional payments, among other terms.

The second element, performance by KeyBank, is also satisfied. The loan documents and affidavit of Mr. Kelly are sufficient to establish that KeyBank disbursed money to Associates and the Gelfonds in the amounts claimed and otherwise performed under the loan documents. Finally, KeyBank has established the third and fourth elements—that the Gelfonds failed to perform and that KeyBank has sustained damages as a result—through the affidavit of Mr. Kelly. Mr. Kelly's affidavit states that the Gelfonds defaulted on their monthly payments and that KeyBank demanded that the Gelfonds pay the amounts owed, to no avail. Q. Kelly Aff. ¶ 21 [Docket No. 11-7]. Mr. Kelly also states that KeyBank has sustained damages in the amounts shown in the above table. *Id.* ¶ 22.

Accordingly, I conclude that KeyBank has met its burden of production under Rule 56 and is entitled to judgment as a matter of law. *See, e.g., Pama Ventures, LLC v. Wellens*, No. 09-CV-01426-REB-CBS, 2010 WL 2574010, at *4 (D. Colo. June 24, 2010) *aff'd,* 443 F. App'x 320 (10th Cir. 2011) (granting summary judgment where it was undisputed that amounts owing on promissory note remained due). KeyBank has proven damages of $389,232.90 through September 3, 2014, with interest accruing at $33.84 per day on the business loan and $31.57 per day on the personal loan. Fifty-six (56) days, including today, have elapsed since September 3. Therefore, I add $1895.04 in interest to the business loan and $1767.92 in interest to the personal loan, for a total of $392,895.86 in damages as of today's date. KeyBank has also proven

entitlement to costs and reasonable attorneys' fees and expenses, but not the amount of these items.  Accordingly, I will direct KeyBank to submit briefing regarding the amount of any attorneys' fees and expenses it seeks to recover.  KeyBank shall have its costs in accordance with Federal Rule of Civil Procedure 58(a) and D.C.COLO.LCivR 54.1.

## IV.  Conclusion

For the foregoing reasons, it is ORDERED that:

1. KeyBank's Motion for Summary Judgment [Docket No. 11] is GRANTED.  KeyBank is awarded $392,895.86 in damages against the Gelfonds.

2. KeyBank shall have its costs in accordance with Federal Rule of Civil Procedure 58(a) and D.C.COLO.LCivR 54.1.

3. KeyBank is entitled to its reasonable attorneys' fees and expenses.  The Court will fix the amount of attorneys' fees and expenses upon motion by KeyBank.  Any such motion shall comply with D.C.COLO.LCivR 54.3 and be filed no later than November 10, 2014.  KeyBank shall address to what extent the Court should grant attorneys' fees and expenses against Associates given that its liability is limited to the business loan.  Any response shall be filed by November 20, 2014.  Any reply shall be filed by December 1, 2014.

BY THE COURT:

  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE

DATED: October 29, 2014